MIN.

# NOTE

Multistate
LOAN NO.

FHA Case No.

ORIGINAL

MARCH 26,    2003
[Date]
54 GRANT STREET
FARMINGDALE, NEW YORK 11735
[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
HOGAR MORTGAGE & FINANCIAL SERVICES, INC.,
A NEW JERSEY CORPORATION

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of

### TWO HUNDRED FIFTY THOUSAND SEVEN HUNDRED FIVE AND 00/100

Dollars (U.S. $    250,705.00    ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of    SIX
percent (    6.000    %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
### (A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
MAY 01    , 2003    . Any principal and interest remaining on the first day of    APRIL 1
2018    , will be due on that date, which is called the "Maturity Date."

### (B) Place
Payment shall be made at    EAST 80 ROUTE 4, SUITE 190
PARAMUS, NEW JERSEY    07652    or at such place as Lender may designate in writing
by notice to Borrower.

### (C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $    2,115.60    . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for
the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a
partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in
writing to those changes.

VMP-1R (0210)    FHA Multistate Fixed Rate Note - 10/95
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 2    Initials:

LOAN NO.

### 6. BORROWER'S FAILURE TO PAY

#### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR                    percent (           4.000           %) of the overdue amount of each payment.

#### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

#### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

### 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)          _____ (Seal)
RUBEN D. FLOREZ          -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

VMP -1R (0210)                    Page 2 of 2

Pay to the order of
Without Recourse
WASHINGTON MUTUAL BANK, FA
By
STACEY G. AMERSON
OFFICER

PAY TO THE ORDER OF WASHINGTON MUTUAL BANK, FA WITHOUT
RECOURSE.

HOGAR MORTGAGE AND FINANCIAL SERVICES, INC.  A NEW JERSEY
CORPORATION.

CONSUELO MACHADO
VICE PRESIDENT

| LOAN #1: | LOAN #2: .5178 | SEQ#: | NEW YORK |
|---|---|---|---|
| MERS ID#: | | | |

## *ALLONGE*

This Allonge is attached to and made a part of that certain Note or Bond, or Lost Note Affidavit in lieu of that certain Note or Bond,

Dated:             3/31/2003

Made By:        **RUBEN D. FLOREZ**, Mortgagors/Trustors

To:                  **HOGAR MORTGAGE AND FINANCIAL SERVICES INC**, Mortgagee/Beneficiary

In the Amount of :   **$250,705.00**

Property Address :   **54 GRANT ST, FARMINGDALE, NY 11735**

Pay to the order of

without recourse.

**WASHINGTON MUTUAL BANK (fka Washington Mutual Bank, FA)**

BY: _____

C. Fetner
Its: Authorized Representative

Pursuant to CPLR 2105 I have compared
this document with the original and found
it to be a true and complete copy

Signed: _____

Name: _____

05/26/2005   00:08    646-548-0308                                PAGE  32

NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 10-15-2003          Record and Return To:
Recorded Time: 12:34:26 p          HOGAR MORTGAGE & FINANCIAL SERVICES INC
                                   EAST 80 ROUTE 4
        Liber Book: M  25182       STE 190
        Pages From:       685      PARAMUS, NJ  07652
              To:         697

            Control
            Number:
            Ref #:
        Doc Type: M01  MORTGAGE


Location:                      Section Block     Lot    Unit
OYSTER BAY (2824)              0048   00567-00  00021

Consideration Amount:            250,705.00




                              Taxes Total          2,482.00
                           Recording Totals            74.00
AAR001                       Total Payment         2,556.00

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
                        KAREN V. MURPHY
                        COUNTY CLERK.



05/26/2005  00:00    646-548-0308                                    PAGE  03

PREPARED BY:

HOGAR MORTGAGE &
FINANCIAL SERVICES, INC.
EAST 80 ROUTE 4, SUITE 190
PARAMUS, NEW JERSEY  07652

———————————————— [Space Above This Line For Recording Data] ————————————————

State of New York

# MORTGAGE

LOAN NO ▮▮▮▮▮▮                              MIN ▮▮▮▮▮▮▮▮▮▮

THIS MORTGAGE ("Security Instrument") is given on    MARCH 28,    2003
The Mortgagor is
RUBEN D. FLOREZ

whose address is   54 GRANT STREET
FARMINGDALE, NEW YORK   11735
("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), is mortgagee. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS
IS THE MORTGAGEE OF RECORD.

HOGAR MORTGAGE & FINANCIAL SERVICES, INC., A NEW JERSEY CORPORATION
("Lender") is organized and existing under the laws of    NEW JERSEY                          , and
has an address of  EAST 80 ROUTE 4, SUITE 190
PARAMUS, NEW JERSEY  07652                              . Borrower owes Lender the principal sum of
TWO HUNDRED FIFTY THOUSAND SEVEN HUNDRED FIVE AND 00/100
                                          Dollars (U.S. $    250,705.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on  APRIL 1,
2018               . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,

FHA New York Mortgage with MERS - 4/96
▮▮▮-4/96(NY) (9705)                  Amended 2/01
Page 1 of 8                              Initials  DF
VMP MORTGAGE FORMS - (800)521-7291

05/26/2005   00:00   545-548-0388         PAGE   84

LOAN NO ▓▓▓▓▓

with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in ▓▓▓▓▓▓▓ County, New York:

SECTION 48
BLOCK 567
LOT 21

which has the address of   54 GRANT STREET              [Street]
FARMINGDALE        [City], New York 11735    [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

4N(NY) drios                 Page 2 of 8                   White   R.J.

## LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being near Farmingdale, in the Town of Oyster Bay, County of Nassau and State of New York, known and designated as and by Lot No. 21, in Block 567 on a certain map entitled, "Map of Parkdale Estates, Sec. No. 2, surveyed April 1954 by Baldwin & Cornelis Co., filed in the Office of the Clerk of Nassau County on October 22, 1954 as Map No. 6279, which said lot is more particularly bounded and described according to said map as follows:

BEGINNING at a point on the Southerly side of Grant Street distant 1403.66 feet Westerly when measured along the Southerly side of Grant Street from the Westerly end of the curve connecting the Southerly side of Grant Street with the Westerly side of Parkdale Drive, and from said point of BEGINNING

RUNNING THENCE South 4 degrees 34 minutes 30 seconds West, 100 feet;

THENCE North 85 degrees 25 minutes 30 seconds West, 80.58 feet;

THENCE North 12 degrees 06 minutes East, 104.38 feet to the Southerly side of Grant Street;

THENCE Easterly along the Southerly side of Grant Street the following (2) courses and distances:
1) On a curve bearing to the left having a radius of 404 feet a distance of 53.06 feet to a point;
2) South 85 degrees 25 minutes 30 seconds East, 14 feet to the point or place of BEGINNING.

FOR CONVEYANCE ONLY

BEING THE SAME PREMISES CONVEYED TO Ruben D. Florez and Betty Rojas-Florez, his wife, who acquired title by a deed from Thomas M. Lynott and Kimberly A. Lynott, dated May 21, 1997, recorded May 30, 1997 in Liber 10781 on Page 305.

TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises.

05/26/2005   00:00    646-546-0388                                    PAGE   06

LOAN NO █████

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

MMM-6NNYI 0109                                          Page 2 of 8                          Initials RP

05/26/2005    00:00    646-548-0300                                          PAGE  07

LOAN NO.

**Hazdoud Property.** Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's right in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

      (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

      (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

@4N8(NY) (0102)                    Page 6 of 8                    Initials:

05/26/2005  20:00    646-548-0308    PAGE  08

LOAN NO

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payment, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

25/26/2005   00:00   548-548-0300                                          PAGE   09

LOAN NO. ████████

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

## NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

...46N(NY) (9102)                              Page 6 of 8                              Initials: ___

LOAN NO

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may bring a lawsuit to take away all of the Borrower's remaining rights in the Property and have the Property sold. At this sale, Lender or another person may acquire the Property. This is known as "Foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount owed Lender, which fees shall become part of the Sums Secured.

Lender may require immediate payment in full under paragraph 9.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. Borrower will not be required to pay Lender for the discharge, but Borrower will pay all costs of recording the discharge in the proper official records.

20. Agreements about New York Lien Law. Borrower will receive all amounts lent by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, Borrower will: (A) hold all amounts which Borrower received and which Borrower has a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before Borrower uses them for any other purpose. The fact that Borrower is holding those amounts as a "trust fund" means that for any building or other improvement located on the Property Borrower has a special responsibility under the law to use the amount in the manner described in this paragraph 20.

21. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider              ☐ Growing Equity Rider          ☐ Other [specify]
☐ Planned Unit Development Rider  ☐ Graduated Payment Rider

SAID PREMISES ARE OR WILL BE IMPROVED
BY A ONE OR A TWO FAMILY DWELLING

ISID-4N(NY)(0109)                        Page 7 of 8

05/26/2005   00:00    646-548-0308                                          PAGE   11

LOAN NO.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in
my rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          RUBEN D. FLOREZ              -Borrower

_____          _____ (Seal)
                                                                      -Borrower

_____ (Seal)            _____ (Seal)
                        -Borrower                                     -Borrower

_____ (Seal)            _____ (Seal)
                        -Borrower                                     -Borrower

_____ (Seal)            _____ (Seal)
                        -Borrower                                     -Borrower


STATE OF NEW YORK                              )
                                               )ss.
County of  Nassau                              )

    On the    26TH    day of MARCH         in the year  2003    before me, the undersigned, a
notary public in and for said state, personally appeared
RUBEN D. FLOREZ

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that   he     executed the same in   his
capacity(ies), and that by   his     signature(s) on the instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument.

My Commission Expires:                        _____
                                              Notary Public

The Map Information:

                                              JOSEPH M. LEVINE
                                              Notary Public, State of New York
                                              No. 02LE6018939
                                              Certified in Westchester County
                                              Commission Expires  7/27/2005

(DID-6N)NY)(8103)                             Page 6 of 6

Section 43
Block 5C)
Lot   21

05/26/2005   00:00    646-548-0308                                    PAGE   12

# 1-4 FAMILY RIDER
### Assignment of Rents

THIS 1-4 FAMILY RIDER is made this      26TH day of   MARCH      , 2003 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to

HOGAR MORTGAGE & FINANCIAL SERVICES, INC.,
A NEW JERSEY CORPORATION                                               (the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

54 GRANT STREET
FARMINGDALE, NEW YORK   11735
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to
the Property described in the Security Instrument, the following items are added to the Property
description, and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to
be used in connection with the Property, including, but not limited to, those for the purposes of supplying
or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing
apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks,
ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm
doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached
floor coverings now or hereafter attached to the Property, all of which, including replacements and
additions thereto, shall be deemed to be and remain a part of the Property covered by the Security
Instrument. All of the foregoing together with the Property described in the Security Instrument (or the
leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the
Security Instrument as the "Property."

MULTISTATE 1-4 FAMILY RIDER - Freddie Mac Uniform Instrument
Page 1 of 3                                    Initials: ___
-57U (9765)                 VMP MORTGAGE FORMS - (800)521-7291              Form 3170 3/93
LOAN NO _____

05/26/2005  30:00   646-542-0308                                      PAGE  13

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or in its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac Uniform Instrument
GOL-1570 (9705)                Page 2 of 3                    Form 3170 3/93
LOAN NO. ███                                         Initials: ___

05/25/2005  00:00    646-548-0308                                                    PAGE  14

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
RUBEN D. FLOREZ        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                -Borrower

MW-167U (0705)            Page 3 of 3              Form 3170 3/93

LOAN NO.




@ three lig
Hanover cap.

NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 01-25-2006          Record and Return To:
Recorded Time: 10:50:16 a          FIRST AMERICAN TITLE
                                   PO BOX 27670
    Liber Book: M  30007           ATTN: SPECIAL DEFAULT SERVICES
    Pages From:        487          DIVISION
           To:        494          SANTA ANA, CA  27670

        Control
        Number:
         Ref #:
    Doc Type: M01  MORTGAGE

Location:                 Section  Block   Lot    Unit
OYSTER BAY (2824)         0048     00567-00 00021

Consideration Amount:              18,442.20

                         Taxes Total           163.20
                       Recording Totals          58.00
RPF001                     Total Payment        221.20

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
                     MAUREEN O'CONNELL
                       COUNTY CLERK



RECORD AND RETURN TO:
FIRST AMERICAN TITLE
P.O. BOX 27670
SANTA ANA, CALIFORNIA 92799-7670
ATTN: SPECIAL DEFAULT SERVICES DIVISION

THIS DOCUMENT WAS PREPARED BY:
DANNETTE PHILPOT
WASHINGTON MUTUAL BANK
7255 BAYMEADOWS WAY
JACKSONVILLE, FL 32256

FHA Case No.

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this   **NOVEMBER 10, 2005**
between   **RUBEN D. FLOREZ**

("Borrower"), whose address is
**54 GRANT STREET**
**FARMINGDALE, NEW YORK 11735**
and
**WASHINGTON MUTUAL BANK, F.A.**

("Lender"), whose address is   **7255 BAYMEADOWS WAY**
**JACKSONVILLE, FLORIDA 32256**
and given to Mortgage Electronic Registrations Systems, Inc. ("MERS") (solely as nominee for Lender, and
Lender's successors and assigns), as beneficiary, MERS is organized and existing under the laws of Delaware,
and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS,
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated
**MARCH 26, 2003**     and recorded in  **BOOK 25182, PAGE 685**
JA SSAm                          **COUNTY,   NEW YORK**                       , and (2) the Note, in
the original principal amount of U.S. $        250,760.00         , bearing the same date as, and secured by,
the Security Instrument, which has been assigned MERS Registration No.
and MERS Registration Date  **MARCH 26, 2003**                        , and which covers the real and
personal property described in the Security Instrument and defined therein as the "Property", located at
**54 GRANT STREET**
**FARMINGDALE, NEW YORK 11735**          *current UPB of 231,457.01*
HUD MERS Modification Agreement                  *Capped out $18,442.20— New monies*
FANDM NYHUDDMERSMOD Rev. 07-29-02          Page 1

the real property described is located in  NASSAU    COUNTY, NEW YORK
and being set forth as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF;

Tax Parcel No.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **DECEMBER 1, 2005**        , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $    249,851.21              consisting of the amount(s) loaned to the Borrower by the Lender and interest capitalized to date in the amount of U.S. $    18,442.20

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of          6.000 %, from **DECEMBER 1, 2005**      . The Borrower promises to make monthly payments of principal and interest of U.S. $    2,393.19      , beginning on the first day of JANUARY, 2006              , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.  If on **APRIL 01, 2018**            (the "Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

The Borrower will make such payments at
**WASHINGTON MUTUAL BANK, F.A.**
**P.O. BOX 3200**
**MILWAUKEE, WISCONSIN 53224**
or at such other place as the Lender may require.

3. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:

HUD-MERS Modification Agreement
FANDI NYHUDMERSMOD-2.A Rev. 01-10-05              Page 2



(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. If the Borrower has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy, and there having been no valid reaffirmation of the underlying debt, by entering into this Agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt.

6. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

RUBEN D. FLOREZ _____ -Borrower

_____ -Borrower

_____ -Borrower

_____ -Borrower

Mortgage Electronic Registration Systems, Inc. as nominee for
WASHINGTON MUTUAL BANK, F.A.

Name:    MAMIE CLARK _____ -Lender
Its:      VICE PRESIDENT

HUD MERS Modification Agreement
FAND# NYHUDMERSMOD-3 Rev. 10-20-05            Page 3

**BORROWER ACKNOWLEDGMENT**

State of New York
County of _Queens_

On _November 28, 2005_    before me,
personally appeared
RUBEN D. FLOREZ
_NYS ID_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _[signature]_

Printed Name _Ruben Perez_

ARNOLD COLORADO
Notary Public – State of New York
NO. 01CO4977185
Qualified in Queens County
My Commission Expires 01-28-2007
(Seal)

**LENDER ACKNOWLEDGMENT**

State of _Florida_
County of _Dural_

On _12-2-05_    before me,
personally appeared **MAMIE CLARK**                              , the **VICE PRESIDENT**
of _Washington mutual_

a                                                                         , on behalf of said entity,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Savannah Lyn Rogers_

Printed Name _Savannah Lyn Rogers_

SAVANNAH LYN ROGERS
Notary Public - State of Florida
My Commission Expires May 17, 2008
Commission # DD 250300

LEGIBILITY POOR
FOR MICROFILM

HUD MERS Modification Agreement
FAND# NYHUDMERSMOD-4 Rev. 07-29-02                    Page 4

2

Title No.: ▮▮▮▮▮

**RECEIVED IN THIS CONDITION**

### SCHEDULE A

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, with the buildings and improvements thereon erected, situate, lying and being near Farmingdale, in the Town of Oyster Bay, County of Nassau and State of New York, known and designated as and by Lot No. 21, in Block 567 on a certain map entitled, "Map of Parkdale Estates, Sec. No. 2, surveyed April 1954 by Baldwin & Cornelis Co., filed in the Office of the Clerk of Nassau County on October 22, 1954 as Map No. 6279, which said lot is more particularly bounded and described according to said map as follows:

BEGINNING at a point on the Southerly side of Grant Street distant 1403.66 feet Westerly when measured along the Southerly side of Grant Street from the Westerly end of the curve connecting the Southerly side of Grant Street with the Westerly side of Parkdale Drive, and from said point of BEGINNING

RUNNING THENCE South 4 degrees 34 minutes 30 seconds West, 100 feet;

THENCE North 85 degrees 25 minutes 30 seconds West, 80.58 feet;

THECNE North 12 degrees 06 minutes East, 1,04.38 feet to the Southerly side of Grant Street;

THENCE Easterly along the Southerly side of Grant Street the following (2) courses and distances:

    1) On a curve bearing the loft having a radius of 404 feet a distance of 53.06 feet to a point;

    2) South 85 degrees 25 minutes 30 seconds East, 14 feet to the point or place of BEGINNING.



### AFFIDAVIT UNDER SECTION 255 OF THE NEW YORK STATE LAW
### (MODIFICATION AGREEMENT)

I, MAMIE CLARK                                         , being duly sworn, deposes and says:

1. That he/she is the agent for the owner and holder of the hereinafter described mortgage, and is familiar with the facts set forth herein.

2. A certain mortgage bearing the date of    **MARCH 26, 2003**             , in the principal amount of **TWO HUNDRED FIFTY THOUSAND SEVEN HUNDRED FIVE AND NO / 100** ($   250,705.00   ) was made by **RUBEN D. FLOREZ**

   as Mortgagor to **HOGAR MORTGAGE & FINANCIAL SERVICES, INC.**

   as original Mortgagee, recorded on   OCTOBER 15, 2003     , in Liber 25182        Page 685
   Instrument No:              , and assigned to

   dated          in Liber          Page          , Instrument No.              , in the
   Nassau .          County Clerk's Office, upon which the mortgage tax was duly paid thereon.

3. The Instrument offered for recording herewith is a Modification made by **RUBEN D. FLOREZ**

   to
   **WASHINGTON MUTUAL BANK, F.A.**
   effective  **DECEMBER 1, 2005**      , and to be recorded in the  Nassau
   County Clerk's Office.

4. The instrument offered for recording modifies and does not create or secure any new or further lien, indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the recorded mortgage hereinabove first described with the exception of the following amount:

   a)   Unpaid principal balance        $ 231,409.01
   b)   New unpaid principal balance  $ 249,851.21
   c)   b minus a equals               $ 18,442.20
   d)   Additional obligation secured by mortgage as modified

Additional mortgage recording tax of $ 163.75         is therefore being paid on this Modification on the sum set forth in 4c.

That Exemption from further tax is CLAIMED under Section 255 of the Tax Law.

WASHINGTON MUTUAL BANK, F.A.

Name: MAMIE CLARK
Title: VICE PRESIDENT

FANO# SDSNYMOD255 Rev. 08-17-04

State of Florida
County of Duval

On this 12-2-05 , before me, the undersigned, a Notary Public in and for said state, personally appeared
**MAMIE CLARK , VICE PRESIDENT**

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

SAVANNAH LYN ROGERS
Notary Public - State of Florida
My Commission Expires May 17, 2009
Commission # DD 430366

*Savannah Lyn Rogers*
Notary Public
My commission expires: 5-17-2009

**LEGIBILITY POOR
FOR MICROFILM**




**NASSAU COUNTY CLERK'S OFFICE**
**ENDORSEMENT COVER PAGE**

Recorded Date: 07-13-2009        Record and Return To:
Recorded Time: 12:09:19 p        PILLAR PROCESSING, LLC
                                 220 NORTHPOINTE PKWY
    Liber Book: M 33933          SUITE B
    Pages From:      580          AMHERST, NY  14228
           To:       581

        Control
        Number:    ▮▮▮▮▮▮
        Ref #:
    Doc Type: M23  ASSIGN MORTGAGE

    Refers to: Book: M 25182 Page: 685
               Book: M 30007 Page: 487

Location:                   Section Block    Lot    Unit
OYSTER BAY (2824)           0048    00567-00 00021

                            Taxes Total          .00
                         Recording Totals      60.00
AAR001                      Total Payment      60.00

    THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
                          MAUREEN O'CONNELL
                          COUNTY CLERK



## *ASSIGNMENT OF MORTGAGE*

County of NASSAU, State of New York

A 3300 SD 34th Ave Suite 101 Ocala FL 34474

Assignor: Mortgage Electronic Registration Systems, Inc. as nominee for Washington Mutual Bank, F.A.. as successors and assigns. 3300 SW 34th Ave. Suite 101. Ocala, FL 34474

Assignee: Wells Fargo Bank, N.A., 1200 West Parkland Ave., Milwaukee, WI 53224

Original Lender: Mortgage Electronic Registration Systems, Inc. as nominee for Hogar Mortgage & Financial Services, Inc.

Mortgage made by RUBEN D. FLOREZ, dated the 26th day of March, 2003 in the amount of Two hundred and fifty thousand seven hundred and five dollars ($250,705.00) and interest, recorded on the 15th day of October, 2003 in the Office of the Clerk of the County of NASSAU at Liber 25182 of Mortgages at Page 685.

Loan Modification Agreement made by RUBEN D. FLOREZ, given to Mortgage Electronic Registration Systems, Inc. as nominee for Washington Mutual Bank, F.A., dated the 10th day of November, 2005 in the amount of Eighteen thousand four hundred and forty two dollars and twenty cents ($18,442.20) and interest, recorded on the 25th day of January, 2006 in the Office of the Clerk of the County of NASSAU at Liber 30007 of Mortgages at Page 487. Said agreement capitalized interest to form a single lien of Two hundred and forty nine thousand eight hundred and fifty one dollars and twenty one cents ($249,851.29) and interest.

Property Address: 54 GRANT STREET, FARMINGDALE, NY 11735
SBL # 48-567-21

Know that All Men By These Present in consideration of the sum of One and No/100th Dollars and other good valuable consideration, paid to the above Named assignor, the receipt and sufficiency of which is hereby acknowledged the Said Assignor hereby assigns unto the above named Assignee the said Mortgage, and the full benefit of all the powers and of all the covenants and Provisions therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

*TO HAVE AND TO HOLD* the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.
*THIS* Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.
*IN WITNESS WHEREOF,* the Assignor has caused these presents to be signed by its duly authorized officer this 9th day of June, 2009.
*IN PRESENCE OF*

Mortgage Electronic Registration Systems, Inc. as nominee for Washington Mutual Bank, F.A.. its successors and assigns

BY: _____
Elpiniki M. Bechakas
Assistant Secretary and Vice President

State of New York
County of Erie    ss:
On the 9th day of June in the year 2009 before me, the undersigned, a notary public in and for said state, personally appeared Elpiniki M. Bechakas, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument

_____
Notary Public

CHERYL LARKIN
Notary Public, State of New York
Qualified in Erie County
My Commission Expires _____

Pillar Processing, LLC
220 Northpointe Pkwy., Suite B
Amherst, NY 14228